Douglas Bruce
Box 26018
Colorado Springs CO 80936
(719) 550-0010
taxcutter@msn.com

FILED
SCRANTON

JUL 17 2023

PER _____
DEPUTY CLERK

Plaintiff

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

DOUGLAS BRUCE,

    Plaintiff,

v.

CITY OF PITTSTON,
PENNSYLVANIA,

    Defendant.

CIVIL ACTION - LAW
JURY TRIAL DEMANDED

THE HONORABLE
KAROLINE MEHALCHICK

No. 3:23-cv-00711-KM

---

Plaintiff answers defendant's motion for sanctions under F.R.Civ.P. Rule 11 as follows:

**Defendant's lawless actions override normal procedures to honor the Bill of Rights.**

This answer resists defendant's sequence of acts of illegality and intimidation. It urges this court to reject robotic, unthinking, mechanical application of normal processes in Bill of Rights claims and cases. Look at the facts revealing a wave of City corruption.

1. Defendant misused Rule 11 to intimidate plaintiff's counsel into withdrawing from representing plaintiff; that tactic is abusive and unethical. Plaintiff has a right to retain counsel free of City intimidation and threats to make his counsel personally liable if they represent him. Defendant seeks dismissal with prejudice of a lawful complaint. Why?

The City misused valid theory to cripple the complaint and unilaterally determine its fate. Defendant has illegally demolished the building at issue and plaintiff is undeterred. The City's string of abuses before and after demolition compel plaintiff to seek justice in this court and enforcement of his constitutional claims on equitable grounds to counter defendant's acts of intimidation. We owe that effort to the Founding Fathers.

2. The City has an urban renewal project. It demolished the property to avoid paying market value for its condemnation. That is unethical, illegal, and unfair. SCOTUS has often summarized principles of due process of law as "fundamental fairness." The procedures here were "fundamentally unfair" in many substantial ways.

3. The City began targeting plaintiff's empty, boarded up building by mailing a slew of facially false citations for "DEMOLITION." Plaintiff was once a prosecutor for over five years and knows criminal law. There is no crime of "demolition" of one's own property. The code section simply defined a general event. Numerous citations of that non-offense do not provide specificity. They contain no verb accusing plaintiff of a specific demolition. There was no demolition by plaintiff, yet each of a dozen or more citations shown in defendant's motion imposed "fines" as "excessive fines" for an imaginary event. See the Eighth Amendment, passed in 1791 and resurrected in 2019 by SCOTUS in <u>Timbs v. Indiana</u>.

4. Plaintiff never saw a description of any demolition by him, but he did receive mandatory court dates in Pittston PA for plaintiff to appear. No citation was signed by a

judge, prosecutor, or peace officer, only by an alleged city employee in a building office. He was obviously unaware of the limits of his jurisdiction and included a "fine" for plaintiff to pre-pay at his appearance. This was not an arraignment or trial, but a fine-in-advance collection process in lieu of "conviction" of unintelligible, unspecified charges.

5. The citations never rose to the level of childish pranks. Plaintiff was never in the jurisdiction of Pittston, nor did he authorize any actions to be taken there on his behalf. At all times, plaintiff was a resident of Colorado Springs CO, living there continuously since 1986. Defendant has no *in personam* jurisdiction over plaintiff and could not legally order his personal appearance in any court. Owning an empty building is no crime, but simply an innocent investment.

6. Defendant's motion and exhibits revealed three one-page letters by an alleged local engineer reporting alleged observation of the building's outside, made during what the letters called a "cursory" inspection. Plaintiff first saw copies of the letters in reading defendant's motion. Plaintiff has yet to receive a copy of a judicially-issued search warrant return. The engineer never wrote he obtained one. Entry into a boarded-up building without a search warrant is illegal on its face. Fruits of illegal search must be suppressed and shall not justify defendant's illegalities. Mapp v. Ohio, 1961. A "cursory" outside view offering no photos or other evidence cannot excuse the extreme act of DEMOLITION without a judicial hearing that includes the owner.

7. Plaintiff received post cards from a local "constable" stating a warrant had been

issued for the criminal arrest of plaintiff on unspecified charges. This "shocks the conscience" and is overtly illegal conduct by the Pittston government and "judiciary."

8. The prior owner of the building was Helen Collins, a friend now deceased. She was a city council member. An "arrest warrant" for her was shown at her door by an El Paso County sheriff's deputy, who laughed with Mrs. Collins about the obviously illegal document issued in Pennsylvania by defendant. No warrant was ever served on her.

9. Defendant's motion and exhibits reveal still more brazen and lawless acts. Its court documents reveal docket entries of purported trials *in absentia* against plaintiff, who was found "guilty" of a still unknown crime. Docket entries record that <u>plaintiff was "represented" by an alleged local attorney, William Watt III, whom plaintiff never met nor hired nor talked with</u>. See defendant's exhibits H, J, L, N, and P, This astounding FRAUD is beyond the pale, but proves the corrupt scheme of defendant. It also truly "shocks the conscience" in a "smoking gun" series of scandalous due process violations.

10. The only demolition here was by defendant. It was done without lawful judicial approval. A city council led by Mayor Lombardo approved the illegal act to cover the tracks of the City's ongoing rampage. The mayor viewed the empty, boarded up building as "in the way" of the City's $18+ million urban redevelopment dreams.

11. Defendant's improper manufacture and importation of extraneous "evidence" should all be stricken from the record and the motion. See paragraph 7 and other insertions;

defendant's attempted "trial by newspaper" with unauthenticated stories; unsworn letters not furnished to plaintiff before demolition (paragraph 12); trivial code infractions not told to plaintiff before demolition (paragraph 13); any finding of a "code official" (not given to plaintiff) that the time to make unspecified repairs expired (paragraphs 14 and 15, with 15 violating requirements of 14); a jail sentence of 30 days **per day** of violation (paragraph 17), which equals **hundreds of days in custody** for anyone foolish enough to appear; etc. In paragraphs 28 and 35, defendant unethically inserted unauthenticated, alleged newspaper reports as evidence of fines, with the added motive of exploiting an emotional reaction by Pittston and this court.

12. Note the "court" <u>ignored</u> all motions to dismiss described in paragraphs 20, 23, 25, 27, and later. No telephone hearing was allowed, no responsive document was filed-- just silence. Demolition was apparent revenge for resisting the flood of illegal citations and arrest warrants, and the understandably pointed criticisms of this gangster "system." Defendant's conduct, antithetical to due process of law, is the poster child of venality.

13. Paragraphs 29-33 show five trials *in absentia* were conducted in one day. Lo and behold, plaintiff was found guilty. Court dockets report he was "represented" by an attorney HE NEVER MET. How more lawless can Defendant be? Paragraph 34 says plaintiff was served (in Colorado) with the five sentences of the five trials ALL HELD THAT SAME DAY.

14. Paragraph 36 "excuses" non-imposition of one fine for lack of a conviction

(contrary to all other fines imposed). Here, that exception is laughable.

15. Paragraph 37 invents a legal duty for plaintiff to list in his complaint the dates of the illegal fines. That is part of the record Defendant detailed in his motion. Demolition was the biggest "excessive fine" of all, and it was based on no proven illegal conduct.

16. Paragraph 38 says demolition was a "remedy" for unspecified violations; that is obviously not due process of law. It lists another unauthenticated article, apparently by a television station, as "evidence." Chronic misconduct merits judicial discipline.

17. Paragraphs 39 and 40 admit an apparent break-in (without a warrant) into the empty building. No illegal search can be justified by what it may reveal. Plaintiff never learned of this vague threat to the "general public" by a boarded-up empty building.

18. Paragraph 42 mentions consulting with an "engineer," but does not prove the code officer ever saw the inside of the building, or offered any photos. It does not detail dangerous conditions except by conclusions. Plaintiff never saw a list of (unknown) conditions, nor evidence they were "no longer able to be repaired," as allowed by the adopted Code. What "reasonable man" would demolish his own building based on such generalities and "opinions?" Or surrender to indefinite jailing by appearing before a overtly lawless, obviously corrupt local city? No demolition is legally justified by a single opinion; thoughtful judicial rulings subject to appeal are required.

19. Paragraphs 47 *et seq.* continues defendant's misconduct by inserting more unsworn,

unauthenticated claims from alleged media outlets.

20. Defendant injects unauthenticated statements from other sources in paragraphs 55 and 56. They are impermissible and unethical to include in this motion.

21. Defendant's dumbest defense is paragraph 58: The Bill of Rights does not apply to defendant (sic). The City needs a tutorial on the Fourteenth Amendment and SCOTUS rulings. Is it any wonder their <u>Nemeth</u> opinion was unpublished? Yet it was cited.

22. In paragraph 62, defendant exalts its brute force "police power" above the U. S. Constitution. Is it any wonder plaintiff did not appear in Pittston? The paragraph cites truly scary "opinions" on Bill of Rights law.

23. <u>Rooker-Feldman</u> does not prevent plaintiff's complaint. He had no fair opportunity to make his due process case before demolition; he never appeared in state court (tried *in absentia*); he was threatened with virtually unlimited jailing for no listed acts; etc.

24. In paragraph 68, Rule 11 (b)(2) excepts a litigant goal of "<u>extending, modifying, or reversing existing law or for establishing new law</u>." That is what plaintiff is doing. The complaint is justified by facts in this Answer, so defendant's motion fails. Claiming a building may someday be demolished for undefined reasons is no notice at all. The City never held a judicial hearing on its vague demand the building be demolished. Section 111.1, Property Maintenance Code, says appellants must pay an unknown "fee" to appeal denial of a constitutional right (to property) ; that is absurdly void on its face.

See May 8, 2019 enforcement notice. Demolition of a free and clear property lets the city seizes the equity to repay itself. The City's position its "police power" overrides the Fourteenth Amendment is insane and unAmerican. THAT view is what is "frivolous."

25. Plaintiff opposes all requests in paragraph 81 and elsewhere in the motion.

26. Plaintiff notes a mailed summons required plaintiff PRE-PAY its $1,000 fine, or at least $50 "as collateral for your appearance at trial," plus <u>any</u> added sum the "judge shall require." Pre-payment for arraignment is bizarre and flatly unconstitutional, as is payment of a fine before conviction (as shown on its "non-traffic" citations). See copy of pre-numbered citation R 2456493-4 which lists "DEMOLITION as "nature of offense" in box 20 and "$1,000" as pre-arraignment "fine" in box 25. Such scofflaws!

27. Plaintiff incorporates in this Answer the texts of his multiple Motions to Dismiss the City listed in Exhibits I, J, and K of its motion. There are more examples of rampant illegality and even criminality. A jurist must see this is no perfunctory case for robot-like denial of protection by 42 USC 1983. The victim, plaintiff, was scared, intimidated, and coerced by large financial threats and real risks of kidnapping and jailing. Implied, common sense exceptions exist to any routine local statute of limitations; here is one.

***************

28. This court cannot ratify or cover up this trail of municipal corruption. Sanctions must be denied. The motion, filed with unclean hands, and its implied motion to dismiss the complaint, must both be denied. Any procedural delay in filing must be equitably

excused and any statute of limitations tolled as an act of reasonable response in the face of rampant government misconduct. All warrants of arrest for plaintiff, and all fines, costs, and damages in this case, must be withdrawn and dismissed. The City has no harm from a delay in filing this complaint; the facts were frozen at the demolition.

Plaintiff's complaint must proceed to a jury trial on its merits. Plaintiff intends to amend his complaint to add claims for damages under eminent domain law. Plaintiff also asserts explicit rights in our federal constitution cannot have 50+ random statutes of limitations imposed by courts to evade their plain meaning and enforcement in 50 states or other localities; they must be as uniform in America as the full Bill of Rights. Even if broken, property rights cannot yield to abusive public misuse of demolition. Lawless local acts or abuses cannot be protected or shielded by customary limits and filing time lines.

Viewing strong disunity and mistrust of federal institutions, it is vital that "fundamental fairness" consistently prevail in federal courts. "EQUAL JUSTICE UNDER LAW."

/s/  *Douglas Bruce*
Douglas Bruce, plaintiff

NOTE: After over four hours of effort, plaintiff was unable to access the court's PACER system. He paid over $25 to send the Answer by Express Mail and he sent a second copy to defendant's attorney, with a courtesy request to forward it ASAP to the court from his own PACER account. <u>Plaintiff asks the court to provide plaintiff a simple email address to the court clerk for further emails that are needed.</u> PACER is ridiculously complicated.

## CERTIFICATE OF MAILING

I hereby certify that on July 13, 2023, I mailed and emailed a copy of this Answer to defendant's attorney, addressed as follows:

Joseph J. Joyce III
9 N. Main Street Suite 4
Pittston PA 18640

jjj@joycecarmody.com

/s/ _____
Douglas Bruce

## CERTIFICATE OF COMPLIANCE

This Answer was typed in Times New Roman 14-point type. It contains 2113 words.

/s/ _____
Douglas Bruce

# PRIORITY MAIL EXPRESS®

**FROM:** (PLEASE PRINT) PHONE (719) 550-0010

DOUGLAS BRUCE
BOX 26018
COLORADO SPRINGS Co 80936

**TO:** (PLEASE PRINT) PHONE ( )

MAGISTRATE K. MEHALCHICK
CLERK'S OFFICE
235 N. WASHINGTON AVE
BOX 1148 SCRANTON PA
SCRANTON PA 18501 18501

RECEIVED SCRANTON
JUL 17 23
PER _____ 50
DEPUTY CLERK

USPS tracking: EI 674 015 012 US

ZIP Code: 80918
Scheduled Delivery Date: 07/14/23
Date Accepted: 07/13/23
Time Accepted: 1412 PM
Flat Rate
Weight: 0 lbs 0 oz
Postage: $28.75
Total Postage & Fees: $28.75
Delivery Attempt: 7/15/23 Time: 510 PM
Employee Signature: Business Repro

FLAT RATE ENVELOPE
ONE RATE ■ ANY WEIGHT

EP13F July 2022
OD: 12 1/2 x 9 1/2

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail Express® shipments. Misuses may be a violation of federal law. This package is not for resale. EP13F © U.S. Postal Service; July 2022. All rights reserved.

This package is made from post-consumer waste. Please recycle – again.