# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

DOUGLAS BRUCE,

                Plaintiff,

      v.

CITY OF PITTSTON, PENNSYLVANIA,

                Defendant.

CIVIL ACTION NO. 3:23-CV-00711

(MEHALCHICK, M.J.)

## MEMORANDUM

Before the Court is a motion for judgment on the pleadings and a motion for sanctions filed by Defendant the City of Pittston, Pennsylvania ("Defendant" or "City"). (Doc. 14; Doc. 25). On May 1, 2023, Plaintiff Douglas Bruce ("Bruce") initiated this civil rights action by filing a complaint pursuant to 42 U.S.C. § 1983 against the City, asserting claims for the alleged violation of his rights under the Fifth, Eighth, and Fourteenth Amendments. (Doc. 1). The parties have consented to proceed before the undersigned United States Magistrate Judge pursuant to Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). (Doc. 20). For the following reasons, the City's motions will be GRANTED. (Doc. 14; Doc. 25).

## I. BACKGROUND AND PROCEDURAL HISTORY[1]

---

[1] Generally, a court may not consider any material beyond the pleadings in ruling on a Rule 12(c) motion, but a "court may consider facts that are contained in materials of which the court may take judicial notice." *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999)). The Court may take judicial notice of matters that are (1) generally known within the trial court's territorial jurisdiction or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b). The Court may also consider documents whose contents are alleged in the complaint, even if not attached, provided the complaint "necessarily relies" on the documents or contents thereof, the document's authenticity is uncontested, and the document's relevance is uncontested. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010); *United States*

Bruce is a resident of El Paso County, Colorado. (Doc. 1, ¶¶ 1, 7). Bruce has "46 years of experience in property ownership and . . . currently owns 50 properties across the country." *Bruce v. City of Miamisburg, Ohio*, No. 3:21-CV-80, 2023 WL 184010, at *4 (S.D. Ohio Jan. 13, 2023). On or about October 22, 2012, Bruce, through a straw person, purchased the property located at 385 North Main Street, City of Pittston, Pennsylvania 18640 (the "Property") for $17,500.00 from Deutsche Bank National Trust Company. (Doc. 11-1, at 2-5; Doc. 11-18, at 2-5). The City Code of the City of Pittston incorporates and adopts the International Property Maintenance Code as the property maintenance code for the City, for the purposes of "regulating and governing the conditions and maintenance of all property, buildings and structures." (Doc. 11-21, at 2-6; Doc. 11-20, at 2-11).

---

*v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."). "The defendant may offer such a document, and the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Ritchie*, 342 F.3d at 908.

Courts in the Third Circuit have held that a court may take judicial notice of dockets or other court opinions at the motion to dismiss stage. *In re Congoleum Corp.*, 426 F.3d 675, 679 n.2 (3d Cir. 2005) (taking judicial notice of "state court proceedings insofar as they are relevant"); *see, e.g., In re Trichilo*, 540 B.R. 547, 549 (Bankr. M.D. Pa. 2015) (taking judicial notice of an underlying case's docket); *Mollett v. Leith*, No. 09-1192, 2011 WL 5407359, at *2 (W.D. Pa. Nov. 8, 2011) ("A court may also take judicial notice of the docket in Plaintiffs' underlying criminal trial."), *aff'd sub nom. Mollett v. Leicth*, 511 F. App'x 172 (3d Cir. 2013); *Carroll v. Prothonotary*, No. 08-1683, 2008 WL 5429622, at *2 (W.D. Pa. Dec. 31, 2008) (taking judicial notice of court records and dockets of federal district courts)).

The Court takes judicial notice of the state court dockets, non-traffic citations, enforcement notices, and City of Pittston Property Maintenance Code, which are attached to the City's amended answer. (Doc. 11). However, the Court declines to take judicial notice of any facts contained therein which are subject to dispute and instead relies on Bruce's allegations in analyzing the merits of the motion. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) ("A court may take judicial notice of matters of public record [on a motion to dismiss]. . . . But a court cannot take judicial notice of disputed facts contained in such public records.") (quotations and citations omitted).

On September 18, 2014, the building formerly situated upon the Property (the "Building") was condemned by the City "due to multiple, serious, persistent, unresolved violations" of the International Property Maintenance Code. (Doc. 11-25, at 2). On April 25, 2018, Thomas Leonard, P.E. of TGL Engineering, Inc. issued a report opining that the condition of the Building "presents a serious hazard to the public." (Doc. 11-22, at 2). On November 26, 2018, City Code Enforcement Officer Harry Smith ("Mr. Smith") issued an enforcement notice to Bruce directing that the Building be razed within thirty (30) days in accordance with § 110.1 of the Property Maintenance Code, advising Bruce that he had twenty (20) days to exercise his appellate rights through the City of Pittston Property Maintenance Code Appeals Board, and notifying Bruce that his "[f]ailure to comply may result in the issuance of a non-traffic citations for each violation of the property maintenance code for [each] day [the] offense continues," and that "[u]pon conviction, a fine of not less than $500.00 or more than $2,500.00 and court costs will be imposed per violation, and a lien may be placed upon the property." (Doc. 11-25, at 2-9).

Despite being provided notice ordering the demotion of the Building, Bruce failed to do so within the time required, and as a result, on January 4, 2019, Mr. Smith issued Bruce a non-traffic citation due to his failure to comply with § 110.1 of the Property Maintenance Code, which violation carried a fine, if convicted, of $1,000.00. (Doc. 11-3, at 2-4). On January 8, 2019, Mr. Smith issued Bruce a second non-traffic citation due to his ongoing failure to comply with § 110.1 of the Property Maintenance Code, which violation, if convicted, carried a fine of $1,000.00. (Doc. 11-4, at 2-4). On or about January 17, 2019, Bruce submitted a "motion to dismiss" in Magisterial District Court docket Nos. MJ-11104-NT-0000015-2019 (January 4, 2019, non-traffic citation R2456420-1) and MJ-11104-NT-

0000023-2019 (January 8, 2019, non-traffic citation R2456425-6) to Magisterial District Judge Alexandra Kokura Kravitz. (Doc. 11-9, at 2-5) (arguing that the code enforcement "proceeding is unworthy of a banana republic," and requesting that this "nonsense 'case' be dismissed"). On January 24, 2019, Mr. Smith issued Bruce a third non-traffic citation due to Bruce's ongoing failure to comply with § 110.1 of the Property Maintenance Code, which violation, if convicted, carried a fine of $1,000.00. (Doc. 11-5, at 2-4). On January 25, 2019, Mr. Smith issued Bruce a fourth non-traffic citation due to Bruce's ongoing failure to comply with § 110.1 of the Property Maintenance Code, which violation, if convicted, carried a fine of $1,000.00. (Doc. 11-6, at 2-4). On or about February 8, 2019, Bruce submitted a "renewed motion to dismiss" supplementing his prior motion to dismiss to address the non-traffic citations filed at Magisterial District Court docket Nos. MJ-11104-NT-0000133-2019 (January 25, 2019, non-traffic citation R2456435-2) and MJ-11104-NT-0000134-2019 (January 24, 2019, non-traffic citation R2456434-1). (Doc. 11-10, at 2-5) (calling the proceedings "patently absurd," and stating that it "suggests a kangaroo court proceeding, but that would be a slur on kangaroos"). On March 19, 2019, Mr. Smith issued Bruce a fifth non-traffic citation due to Bruce's ongoing failure to comply with § 110.1 of the Property Maintenance Code, which violation, if convicted, carried a fine of $1,000.00. (Doc. 11-7, at 2-4). On or about April 3, 2019, Bruce submitted a "re-renewed motion to dismiss" supplementing his prior motions to address the non-traffic citation filed at Magisterial District Court docket No. MJ-11104-NT-0000270-2019 (March 19, 2019, non-traffic citation R2456493-4). (Doc. 11-11, at 2). On April 1, 2019, Mr. Smith issued Bruce a sixth and final non-traffic citation due to Bruce's ongoing failure to comply with § 110.1 of the International Property Maintenance Code, which violation, if convicted, carried a fine of $1,000.00. (Doc.

11-8, at 2; Doc. 11-26, at 2-3). On or about April 16, 2019, Bruce submitted a "re-re-re-re-renewed motion to dismiss" supplementing his prior motions to address the non-traffic citation filed at Magisterial District Court docket No. MJ-11104-NT-0000364-2019 (April 1, 2019, non-traffic citation R2455557-6). (Doc. 11-12, at 2-4) (stating that "I can't believe Ms. Kravitz is a real judge who has read the U.S. Constitution. Maybe the janitor is setting trial using her name.").

On May 23, 2019, Bruce was served through the court with following five (5) Orders Imposing Sentence issued by Magisterial District Judge Kravitz:

1. Finding Bruce guilty, *in absentia*, in case No. MJ-11104-NT-0000015-2019 (January 4, 2019, non-traffic citation R2456420-1) and imposing a fine of $1,091.25, which sum represents a $1,000.00 fine and $91.25 in costs (Doc. 11-13, at 2-3);

2. Finding Bruce guilty, *in absentia*, in case No. MJ-11104-NT-0000023-2019 (January 8, 2019, non-traffic citation R2456425-6) and imposing a fine of $1,091.25, which sum represents a $1,000.00 fine and $91.25 in costs (Doc. 11-14, at 2-3);

3. Finding Bruce guilty, *in absentia*, in case No. MJ-11104-NT-0000133-2019 (January 24, 2019, non-traffic citation R2456435-2) and imposing a fine of $1,091.25, which sum represents a $1,000.00 fine and $91.25 in costs (Doc. 11-15, at 2-3);

4. Finding Bruce guilty, *in absentia*, in case No. MJ-11104-NT-0000134-2019 (January 24, 2019, non-traffic citation R2456434-1) and imposing a fine of $1,040.25, which sum represents a $1,000.00 fine and $40.25 in costs (Doc. 11-16, at 2-3); and

5. Finding Bruce guilty, *in absentia*, in case No. MJ-11104-NT-0000270-2019 (March 19, 2019, non-traffic citation R2456493-4) and imposing a fine of $1,040.25, which sum represents a $1,000.00 fine and $40.25 in costs (Doc. 11-17, at 2-3).

No fine and/or sentence has been imposed by Magisterial District Judge Kravitz in docket No. MJ-11104-NT-0000364-2019 (March 29, 2019, non-traffic citation R2455557-6) due to Bruce's failure to enter a plea. (Doc. 11-26, at 2-3).

On April 16, 2019, Thomas Leonard, P.E. of TGL Engineering, Inc., issued a supplemental report opining that "the building continues to present hazards to the general public," including "physical injury (wall failure/loose shingles), fire (trespassers), mold (stormwater infiltration) and disease (animal carcasses)," and recommended "demolition of the structure for health and safety of the general public." (Doc. 11-24, at 2). On May 8, 2019, Mr. Smith issued a second enforcement notice to Bruce, via certified mail and personal service through the El Paso County Sherriff's Office, informing Bruce that due to "the current condition of the property, it is my opinion, after consultation with an engineer, that this property is so deteriorated and dilapidated that it is dangerous, unsafe, insanitary and otherwise unfit for human habitation or occupancy and it is no longer able to be repaired," directing that Bruce demolish the Building and notifying Bruce that "[p]ursuant to section 110.3 of the Property Maintenance Code, your failure to comply with this demolition order within thirty (30) days will result in the demolition of the property by the City of Pittston with all costs being charged against the real estate." (Doc. 11-2, at 2-9). The May 8, 2019, enforcement notice also informed Bruce that he had twenty (20) days to appeal the enforcement action through the City of Pittston Property Maintenance Code Appeals Board, as set forth in § 111 of the Property Maintenance Code. (Doc. 11-2, at 4). Bruce did not timely appeal the enforcement action to the City of Pittston Property Maintenance Code Appeals Board or demolish the Building. (Doc. 17, at 9). On June 24, 2019, City Council unanimously passed Resolution Number 12275 legislatively authorizing the demolition of the Building. (Doc. 11-19, at 2-4). On June 26, 2019, the Building was demolished. *See* Dylan Fearon, *Property owner of demolished Pittston Pub says he's suing city*, Fox 56 Wolf, (June 26, 2019), https://fox56.com/news/local/property-owner-of-demolished-pittston-pub-says-hes-suing-

- 6 -

city; Conrad Swanson, *Douglas Bruce lashes out after town demolishes his building*, The Gazette, (June 27, 2019), https://gazette.com/news/douglas-bruce-lashes-out-after-town-demolishes-his- building/article_a7ba8222-983e-11e9-a854-ab831a96f4e1.html.[2]

On May 1, 2023, Bruce filed a civil rights complaint against the City for alleged violations of his rights under the Fifth, Eighth, and Fourteenth Amendments. (Doc. 1). Count I asserts a claim for the alleged violation of Bruce's rights under the Fifth Amendment Takings Clause arising out of the demotion of the Building. (Doc. 1, ¶¶ 13, 22). Count II asserts claims for the alleged violation of Bruce's Fourteenth Amendment procedural due process rights and Fifth Amendment Due Process Clause arising out of the demolition of the Building. (Doc. 1, ¶¶ 13, 26, 29). Count III asserts a claim for the alleged violation of Bruce's Fourteenth Amendment substantive due process rights arising out of the demotion of the Building. (Doc. 1, ¶¶ 13, 32, 38). Count IV asserts a claim for the alleged violation of the Eighth Amendment Excessive Fines Claims arising out of the demolition of the Building and the issuance of five (5) fines by Magisterial District Judge Kravitz. (Doc. 1, ¶¶ 11, 41, 44, 47-49).

On May 18, 2023, the City issued a safe harbor notice to Bruce's counsel in conformity with Rule 11(c)(2) seeking the withdrawal of Bruce's complaint. (Doc. 26-41, at 2-34).

---

[2] The Court will take judicial notice of the *Fox 56* and *The Gazette* articles to the extent that they demonstrate the occurrence of the demolition of the Building. *See California Pub. Employees' Ret. Sys. v. Chubb Corp.*, No. CIV. NO. 00-4285(GEB, 2002 WL 33934282, at *12 (D.N.J. June 26, 2002) (court took judicial notice of Wall Street Journal Article to the extent that it demonstrates the occurrence of Hurricane Floyd). Bruce does not dispute that the demolition took place on June 26, 2019, and as stated, the Court may consider on a motion to dismiss facts of which it may take judicial notice. *See Oran v. Stafford*, 226 F.3d 275, 289 (3d Cir. 2000) (the Court may take judicial notice of these documents "not to prove the truth of their contents but only to determine what the documents stated.") (quoting *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)).

The City filed an answer on May 23, 2023, and an amended answer on May 31, 2023. (Doc. 10; Doc. 11). On May 25, 2023, Bruce's counsel, Aaron C. Garrett, provided the following response to the City's safe harbor notice:

> Before this case moves any further down the road, we need to address your Rule 11 letter. I have spoken to our client regarding the information and argument contained in your draft Rule 11 motion, and without revealing client confidences, suffice it to say that there is a difference of opinion between myself and Mr. Bruce regarding its validity. I have told Mr. Bruce that the Complaint needs to be withdrawn, but he will not agree to its withdrawal. However, he will agree to allowing Danielle and myself to withdraw from representing him in the case.
>
> Would you stipulate to a motion for Danielle and I to withdraw from the case, and would that address you concerns with the Rule 11 letter? You could then proceed to defend the case in whatever manner you see fit, with Mr. Bruce proceeding *pro se*.
>
> Please let me know your thoughts.
>
> (Doc. 26-42, at 2).

On May 31, 2023, Bruce's counsel filed a stipulated motion to withdraw as counsel, which was granted by the Court on June 27, 2023. (Doc. 12; Doc. 18). On June 1, 2023, the City filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, arguing that Bruce's claims fail as a matter of law. (Doc. 14). On June 9, 2023, following the expiration of the safe harbor period, the City filed a motion for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure due to Bruce's refusal to permit his counsel to withdraw his complaint. (Doc. 25; Doc. 26).

The motions have been fully briefed and are now ripe for disposition. (Doc. 17; Doc. 30; Doc. 31).

## II.  STANDARDS OF REVIEW

### A.  MOTION FOR JUDGMENT ON THE PLEADINGS

A motion for judgment on the pleadings is governed by Rule 12(c) of the Federal Rules of Civil Procedure, which provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Granting a 12(c) motion results in a determination on the merits at an early stage in the litigation," and thus, the movant is required " 'to clearly establish [ ] that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.'" *Inst. for Scientific Info., Inc. v. Gordon & Breach, Sci. Publishers, Inc.*, 931 F.2d 1002, 1005 (3d Cir. 1991) (quoting *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290-91 (3d Cir. 1988)). A Rule 12(c) motion is analyzed under the same standards that apply to a Rule 12(b)(6) motion, construing all allegations and inferences in the light most favorable to the nonmoving party. *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019); Thus, to survive a 12(c) motion, the complaint must contain sufficient factual matter to show that the claim is facially plausible, enabling the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (quoting *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir. 2009)).

"In considering a motion for judgment on the pleadings, a court must accept all of the allegations in the pleadings of the party against whom the motion is addressed as true and draw all reasonable inferences in favor of the non-moving party." *Zimmerman v. Corbett*, 873 F.3d 414, 417-18 (3d Cir. 2017) (citing *Allah v. Al–Hafeez*, 226 F.3d 247, 249 (3d Cir. 2000)). When adjudicating a motion for judgment on the pleadings, the court should generally consider only those allegations contained in the complaint, as well as "documents that are attached to or submitted with the complaint, . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and]

items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006); *see Atiyeh v. Nat'l Fire Ins. Co. of Hartford,* 742 F. Supp. 2d 591, 595 (E.D. Pa. 2010) (court may consider "the pleadings and attached exhibits, undisputedly authentic documents attached to the motion for judgment on the pleadings if plaintiffs' claims are based on the documents, and matters of public record.").

## III. DISCUSSION

The City argues that it is entitled to judgment on the pleadings because each of Bruce's claims fails as a matter of law, and requests that judgment be entered in favor of the Defendant City of Pittston and against Bruce. (Doc. 14; Doc. 17). In addition, the City seeks sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure due to Bruce's refusal to permit his counsel to withdraw his complaint. (Doc. 25; Doc. 26). The Court liberally Bruce's *pro se* filing in opposition to the City's motions. (Doc. 31). The Court address each argument raised in the pleadings and each cause of action alleged in Bruce's complaint. In sum, the Court finds that Bruce's complaint fails as a matter of law and will be dismissed with prejudice.

### A. WHETHER BRUCE'S CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS.

At the onset, through the motion for sanctions, the City contends that all of Bruce's claims are barred by applicable statutes of limitations. (Doc. 30, at 18). The City raised the affirmative defense that Bruce's claims are barred by the statute of limitations in its amended answer filed on May 31, 2023. (Doc. 11, ¶ 52); *see* Fed. R. Civ. P. 8(c)(1). The City asserts that Bruce's claims are barred because: (1) Bruce was aware, no later than June 26, 2019, and that Building was demolished; (2) Bruce was served with Magisterial District Judge Kravitz's Orders imposing the complained of fines on May 23, 2019; and (3) Bruce acknowledged the fines imposed in a June 27, 2019, interview with *The Gazette*. (Doc. 11, ¶¶ 53-55). Conversely,

Bruce argues that any applicable statute of limitations should be tolled "as an act of reasonable response in the face of rampant government misconduct." (Doc. 31, ¶ 28). Bruce asserts that "[l]awless local acts or abuses cannot be protected or shielded by customary limits and filing time limits." (Doc. 31, at 9).

It is well established that actions brought under Section 1983 are "governed by the personal injury statute of limitations of the state in which the cause of action accrued." *O'Connor v. City of Newark*, 440 F.3d 125, 126 (3d Cir. 2006); *see Wilson v. Garcia*, 471 U.S. 261, 266-67 (1985). Under Pennsylvania law—the law of the forum in which the alleged violations of Plaintiffs' constitutional rights occurred—the statute of limitations for personal injury actions is two years. 42 Pa. Con. Stat. § 5524. Accordingly, Bruce's complaint is subject to the two-year limitations period applicable to personal injury actions.

Federal law governs the accrual date of a cause of action under § 1983. *Kach v. Hose*, 589 F.3d 626, 639 (3d Cir. 2009) (citing *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 919 (3d Cir.1991)). The accrual period for statute of limitations purposes begins when a plaintiff knows, or has reason to know, of the injury that constitutes the basis of the action. *Sameric Corp. of Delaware v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir.1998). The "discovery rule," recognized by Pennsylvania law, tolls the statute of limitations period when a plaintiff is unable, "despite the exercise of due diligence," to know of the injury or its cause. *Mest v. Cabot Corp.*, 449 F.3d 502, 510 (3rd Cir.2006) (citing *Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.*, 503 Pa. 80, 468 A.2d 468, 471 (1983)). The tolling continues until "the plaintiff knows, or reasonably should know, (1) that he has been injured, and (2) that his injury has been caused by another party's conduct." *Mest*, 449 F.3d at 510 (citing *Debiec v. Cabot Corp.*, 352 F.3d 117, 129 (3rd Cir.2003)).

As the City persuasively argues, Bruce predicates Section 1983 liability on allegations of actionable conduct occurring beyond the controlling two-year statute of limitations period. Because this action was initiated on May 1, 2023, the relevant two-year statute of limitations forecloses any federal civil rights claims grounded on allegations of unconstitutional conduct occurring before May 3, 2021.[3] All allegations of constitutional misconduct chronicled by Bruce in relation to the complaint—namely, the demolition of the Building on June 26, 2019, the fines imposed by Magisterial District Judge Kravitz on May 23, 2019—are time-barred, as they clearly did not transpire within two years of the day Bruce filed suit on May 1, 2023. (Doc. 1); *see Sameric Corp. of Delaware*, 142 F.3d at 599.

To the extent Bruce may argue that the continuing wrong doctrine is appliable, such an argument is without merit. To allege a continuing violation, the plaintiff must show that all acts which constitute the claim are part of the same *unlawful . . .* practice and that at least one act falls within the applicable limitations period." *Williams v. Borough of Highland Park,* 707 F. App'x 72, 76 (3d Cir. 2017) (emphasis added) (quoting *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165-66 (3d Cir. 2013)). The Third Circuit in *Williams* emphasizes the distinction between "continual unlawful acts" and "continual ill effects from an original violation." *Williams*, 707 F. App'x at 76 (denying application of the continuing wrong doctrine where a municipality's subsequent request for payment stemmed from an initial violation that was never remedied by plaintiffs). The Magisterial District Court's imposition of fines for Property Maintenance Code violations and the City Council's unanimous passing

---

[3] *See* Fed. R. Civ. P. 6(a)(1)(c) ("[I]n computing any time period specified in these rules . . . or in any statute that does not specify a method of computing time . . . include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.").

of Resolution Number 12275 to legislatively authorize the demolition of the Building are not

"unlawful acts," and cannot be a proper basis for the continuing wrong doctrine. (Doc. 11-

13, at 2-3; Doc. 11-14, at 2-3; Doc. 11-15, at 2-3; Doc. 11-16, at 2-3; Doc. 11-17, at 2-3; Doc.

11-19, at 2-4); *see Williams*, 707 F. App'x at 76.

Equitable tolling is also not applicable here, as Bruce has not sufficiently demonstrated

that he "diligently pursued [his] rights," or that "extraordinary circumstances" stood in the

way of the timely filing of his complaint. *See D.J.S.-W v. United States*, 962 F.3d 745, 752 (3d

Cir. 2020) (citing *Menominee Indian Tribe of Wisconsin v. United States*, 577 U.S. 250, 136 S. Ct.

750, 755-56, 193 L.Ed.2d 652 (2016)). Bruce maintains in his opposition brief to the City's

motion for sanctions, without factual support, that "the facts were frozen at the demolition,"

and that the statute of limitations should be tolled "in the face of rampant government

misconduct." (Doc. 31, at 9). Bruce's allegation, without any evidentiary support, is not

enough to necessitate equitable tolling, and thus, the claims are time-barred. *See D.J.S.-W*, 962

F.3d at 752.

Accordingly, Bruce's complaint is dismissed as time-barred.

B.  WHETHER BRUCE ALLEGES *MONELL* LIABILITY.

Next, the Court finds that Bruce's complaint must be dismissed because he has not

plausibly alleged the existence of a policy or custom that was the proximate cause of his

alleged deprivation of rights. Bruce's complaint sets forth claims pursuant to 42 U.S.C. § 1983

for violations of his federal constitutional rights for the City's demolition of the Building.

(Doc. 1). Constitutional claims brought against state actors must be pursued under 42 U.S.C.

§ 1983. Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom,
> or usage, of any State . . . subjects, or causes to be subjected, any citizen of the

United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law. . . .

42 U.S.C. § 1983.

Local governments and municipalities are considered persons under § 1983 and may be sued directly under that section when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dept. of Soc. Servs. of City of NY*, 436 U.S. 658, 690 (1978).

"[A] government entity may not be held vicariously liable under § 1983 for the acts of its employees under a *respondeat superior* theory of liability." *Win & Son, Inc. v. City of Philadelphia*, 162 F.Supp.3d 449, 459 (E.D. Pa. 2016) (citing *Monell*, 436 U.S. at 691). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694; *see also Mulholland v. County of Berks*, 706 F.3d 227, 237 (3d Cir. 2013) ("When a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom." (quotation marks omitted)). "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis in original).

To succeed on constitutional claims under *Monell*, a plaintiff must: "(1) identify a policy, practice, or custom, (2) attribute it to the city, and (3) show a causal link between execution of the policy and the injury suffered." *Win & Son*, 162 F.Supp.3d. at 459 (quoting *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984)) ("A plaintiff must identify the challenged policy, attribute it to the city itself, and show a causal link between execution of the policy and the injury suffered."). The policy or custom must be the "moving force" behind the plaintiff's alleged injury. *Bd of Cty. Comm'rs of Bryan Cty., Oklahoma v. Brown*, 520 U.S. 397, 404 (1997). "Policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Mulholland*, 706 F.3d at 237 (quotation and internal quotation marks omitted). And a "course of conduct is considered to be a 'custom' when, though not authorized by law, such practices of state officials are so permanent and well-settled as to virtually constitute law." *Mulholland*, 706 F.3d at 237 (quotation omitted).

Here, Bruce claims that the Defendant City of Pittston should be liable because it "maintains certain policies, practices, customs, and ordinances through which it has permitted itself to issue excessive and unconstitutional fines against real property without proper notice of the same to the power owners like [Bruce]," and "through which it has permitted itself to demolish buildings on real property without prior notice and the ability to contest the same to the property owners like [Bruce]." (Doc. 1, ¶¶ 17, 18, 27, 34). Bruce asserts that as a result of the City's police, practice, custom, or procedure, the City has unlawfully deprived him of his private property and his substantive and procedural due process rights. (Doc. 1, ¶¶ 19, 28, 35). However, Bruce does not point to any particular policy or custom as the basis of his *Monell* claims. (Doc. 1). Moreover, Bruce does not provide any factual

allegations to connect how the alleged City police *caused* his alleged injuries. Bruce's claims arise from the demolition of the Building, but the complaint does not link this activity to the implementation or enforcement of a City policy or custom. (Doc. 1). Thus, Bruce fails to satisfy the pleading requirements of establishing a *Monell* claim.

Accordingly, Bruce's complaint must be dismissed. *See Estate of Fabics v. City of New Brunswick and its Agents*, 674 F. App'x 206, 211 (3d Cir. 2016) ("But, in failing to trace the alleged constitutional violations to an official custom or policy of the municipality . . . Appellants fail to state a claim against these defendants under Rule 12(b)(6)").

C. WHETHER BRUCE'S FIFTH AMENDMENT TAKINGS CLAUSE CLAIM FAILS.

Count I of the complaint asserts a Fifth Amendment Takings Clause claim against the City pursuant to 42 U.S.C. § 1983 due to the City's demolition of the Building. (Doc. 1, ¶¶ 16-23). Bruce alleges that the actions of the City in ordering, authorizing, and demolishing the Building without notice or permission of Bruce, and without opportunity for a prior hearing, constituted a *de facto* taking of Bruce's property for public use in violation of the Fifth Amendment. (Doc. 1, ¶¶ 16-23; Doc. 31, ¶¶ 4-5). The City argues that Bruce's Fifth Amendment Takings Clause claim fails as a matter of law because the demolition of the Building occurred incident to the City's exercise of its police power and, therefore, the demolition did not constitute a taking within the meaning of the Fifth Amendment. (Doc. 17, at 17-21). In the alternative, assuming *arguendo*, that the City's demotion of the Building performed in strict compliance with the Property Maintenance Code, does not constitute the exercise of the City's police power, Bruce's Fifth Amendment Takings Clause claim nevertheless fails because Bruce maintains title to and a possessory interest in the Property. (Doc. 17, at 21-22; Doc. 11-1, at 3-5; Doc. 1, ¶ 7).

The Takings Clause of the Fifth Amendment provides that private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V. This prohibition applies to state and local governments under the Fourteenth Amendment. *Cowell v. Palmer Twp.*, 263 F.3d 286, 290 (3d Cir. 2001). There is no requirement that a claimant exhaust state remedies before bringing a Takings Clause claim to federal court. *Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162, 2167 (2019). However, property is not "taken" where a city or other appropriate public authority has acted pursuant to its right and obligation to ensure public safety in remediating a dangerous condition. *See In re 106 N. Walnut, LLC*, 447 F. App'x 305, 309 (3d Cir. 2011) ("A municipality may, in the exercise of its police power, without compensation destroy a building or structure that is a menace to the public safety or welfare, or require the owner to demolish the dangerous piece of property.").

Here, the City was acting pursuant to its police power to regulate for the public welfare when it demolished the Building. *See Win & Son*, 162 F.Supp.3d at 459 ("the City had the right to condemn Plaintiffs' property"). The November 26, 2018, enforcement notice issued by Mr. Smith to Bruce directed that he demolish the building, which had been in condemned status since 2014, in accordance with § 110.1[4] of the Property Maintenance Code because the Building posed "a risk to emergency personnel and nearby residents." (Doc. 11-25, at 2-9). After Bruce failed to comply, Mr. Smith issued a second enforcement notice to Bruce on May

---

[4] Section 110.1 of the Property Maintenance Code states, in pertinent part, as follows:

The code official shall order the order of any premises upon which is located any structure, which in the code official's judgment after review is so deteriorated or dilapidated or has become so out of repair as to be dangerous, unsafe, insanitary or otherwise unfit for human habitation or occupancy, and such that it is unreasonable to repair the structure, to demolish and remove such structure . . . .

(Doc. 11-20, at 9-10).

8, 2019, via certified mail and personal service through the El Paso County Sheriff's Office, informing Bruce that due to "the current condition of the property, it is my opinion, after consultation with an engineer, that this property is so deteriorated and dilapidated that it is dangerous, unsafe, insanitary and otherwise unfit for human habitation or occupancy and it is no longer able to be repaired," directing that Bruce demolish the Building and notifying Bruce that "[p]ursuant to section 110.3[5] of the Property Maintenance Code, your failure to comply with this demolition order within thirty (30) days will result in the demolition of the property." (Doc. 11-2, at 2-9). Bruce, again, did not comply. Although Bruce cursorily asserts that the actions of the City were not a valid exercise of its police powers, Bruce does not dispute that the Building on the Property was marked "imminently dangerous," as a threat to the public health and safety. (Doc. 31, ¶¶ 17-18, 22). The City's policies for handling demolition of "Imminently Dangerous" properties have been found to be constitutional. *See Win & Son*, 162 F.Supp.3d at 462; *Johnson v. City of Philadelphia*, No. CV 19-1591-KSM, 2020 WL 2933853, at *9 (E.D. Pa. June 3, 2020).

Further, a Taking Clause claim cannot lie where the plaintiff was not deprived of all beneficial uses of his property. *Munoz v. City of Union City*, 481 F. App'x 754, 759 (3d Cir. 2012) (finding no taking occurred where plaintiff retained a possessory interest in the property); *see also Fisher v. Pratt*, No. CV 19-273 (NLH/KMW), 2020 WL 773262, at *7

---

[5] Section 110.3 of the Property Maintenance Code states, in pertinent part, as follows:

If the owner of a premises fails to comply with a demolition order within the time prescribed, the code official shall cause the structure to be demolished and removed, either through an available public agency or by contract or arrangement with private persons, and the cost of such demolition and removal shall be charged against the real estate upon which the structure is located and shall be a lien upon such real estate.

(Doc. 11-20, at 10).

(D.N.J. Feb. 18, 2020) (finding that no taking occurred when plaintiff's home was demolished after a fire caused a partial collapse where plaintiff had "not alleged a total deprivation of property"). Here, Bruce has not alleged that the City's actions deprived her of all beneficial use of the Property or lost her possessory interest in the Property. (Doc. 31, at 7). Bruce claims losses only for the demolition of the Building and expected profits from renovation and sale of the Building and the Property. (Doc. 1, ¶ 14). As it appears from the pleadings that Bruce has retained possession of the Property and the ability to "put the property to any number of beneficial uses," *Munoz*, 481 F. App'x at 759, the Court finds that the City's demolition of the Building cannot constitute a taking. *See Madar v. City of Philadelphia,* No. CV 19-6033, 2021 WL 2156362, at *12 (E.D. Pa. May 27, 2021) (granting summary judgment where city demolished collapsed building that was marked "imminently dangerous").

Therefore, the Court finds that Bruce has not pled a Fifth Amendment Takings Clause claim because the City demolished the Building pursuant to its police powers and because Bruce has retained possession and beneficial use of the Property. Accordingly, Bruce's Fifth Amendment Takings Clause claim against the City is dismissed with prejudice. *See Peynado v. Ellis*, No. 1:11-CV-1103, 2011 WL 5920767, at *2 (M.D. Pa. Nov. 28, 2011) ("We will not grant leave to file an amended complaint on the constitutional claims because such amendment would be futile.").

D. Whether Bruce's Fifth Amendment Due Process Clause claim fails.

Count II of the complaint asserts a claim against the City for the alleged violation of Bruce's procedural due process rights under the Fifth Amendment Due Process Clause arising out of the demolition of the Building. (Doc. 1, ¶¶ 24-30). Bruce alleges that the City violated his procedural due process rights by failing to give him "proper notice regarding any

maintenance issues or other possible basis for the demolition of the Building, and/or proper notice of the issuance of fines or orders in connection with the same." (Doc. 1, ¶ 10; Doc. 31, ¶¶ 4, 6, 17-18). Bruce also alleges that his procedural due process rights were violated when the City did not provide any notice in advance of the demolition of the Building on the Property and, thus, he could not contest the same. (Doc. 1, ¶ 12; Doc. 31, ¶ 13). Moving for dismissal, the City argues that Bruce's Fifth Amendment Due Process Clause claim fails as a matter of law because the complaint does not complain of any federal government action. (Doc. 17, at 22-24).

The Fifth Amendment provides, in pertinent part, that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. The provisions of the Fifth Amendment only concern, however, federal action, not state or private action. *See, e.g., Dusenbery v. United States*, 534 U.S. 161, 167 (2002) (stating that "[t]he Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law' "); *Nguyen v. U.S. Cath. Conf.*, 719 F.2d 52, 54 (3d Cir. 1983) (stating that "[t]he limitations of the [F]ifth [A]mendment restrict only federal governmental action and not the actions of private entities" (citing *Public Utilities Commission v. Pollak*, 343 U.S. 451, 461 (1952)); *Nemeth v. Off. of Clerk of Superior Ct. of New Jersey*, 837 F. App'x 924, 929 n.5 (3d Cir. 2020) (unpublished) (noting that the district court had properly concluded that, because all of the named defendants were state and private officials and entities, the plaintiff could not pursue a Fifth Amendment claim against any of them because the Fifth Amendment's due process clause only "protects against federal governmental actions, not state actions").

Here, it is undisputed that the sole Defendant in this action, the City, is not a federal agency or actor. (Doc. 1). Rather, the City is a local subdivision of the Commonwealth of Pennsylvania. *See* 42 Pa. C.S.A. § 8501. Therefore, Bruce's Fifth Amendment Due Process Clause claim against the City fails as a matter of law. *See Walker v. Brittain*, No. 1:22-CV-00965, 2022 WL 4454525, at *4 (M.D. Pa. Sept. 23, 2022) (dismissing Fifth Amendment procedural due process claim against employees of the Pennsylvania Department of Corrections).

Accordingly, Bruce's Fifth Amendment Due Process claim against the City is dismissed with prejudice. *See Peynado*, 2011 WL 5920767, at *2.

E. WHETHER BRUCE'S FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS CLAIM FAILS.

Count II of the complaint asserts a claim against the City for the alleged violation of Bruce's procedural due process rights under the Fourteenth Amendment arising out of the demolition of the Building. (Doc. 1, ¶¶ 24-30). Bruce alleges that the City violated his procedural due process rights because he "never received any notice in advance of the demotion of the building on the Property and he therefore did not have the ability to contest the same." (Doc. 1, ¶¶ 10-12; Doc. 31, ¶¶ 4, 6). Moving for dismissal, the City argues that Bruce's Fourteenth Amendment Procedural Due Process Clause claim fails as a matter of law because "contrary to his representations to the Court, [Bruce] received, by way of certified mail and personal service through the El Paso County Sheriff's Office, notice that if he did not demolish the Building within thirty (30) days the City would do so." (Doc. 17, at 25; Doc. 11-2, at 2-9). Further, the City asserts that Bruce was also notified that if he wanted to challenge the enforcement action, he had twenty (20) days to appeal to the City's Property Maintenance Code Appeals Board. (Doc. 17, at 25; Doc. 11-2, at 4).

"At the core of procedural due process jurisprudence is the right to advance notice of significant deprivations of liberty or property and to a meaningful opportunity to be heard." *Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998). In order to successfully establish a *prima facie* case of a procedural due process violation, a plaintiff must show: (1) there has been a deprivation of the plaintiff's liberty or property, and (2) the procedures used by the government to remedy the deprivation were constitutionally inadequate. *See Studli v. Children & Youth Families Central Reg'l Office*, 346 F. App'x 804, 813 (3d Cir. 2009); *Mulholland v. Gov't of Cty. of Berks*, No. 10-CV-5616, 2012 WL 1057446, at *8 (E.D. Pa. Mar. 29, 2012), *aff'd*, 706 F.3d 227 (3d Cir. 2013). Remedial procedures will be deemed constitutionally inadequate if "they contain a defect so serious [as to] characterize the procedures as fundamentally unfair." *See Leonard v. Owen J. Roberts Sch. Dist.*, No. 08-CV-2016, 2009 WL 603160, at *4 (E.D. Pa. Mar. 5, 2009) (citing *Daniels v. Williams*, 474 U.S. 327, 341 (1986) (Stevens, J., concurring)). In other words, "the focus in procedural due process claims is on the adequacy of the remedial procedure, and not on the government's actual actions that allegedly deprived the individual of his liberty or property interest." *K.S.S. v. Montgomery Cty. Bd. of Comm'rs.*, 871 F. Supp. 2d 389, 397-98 (E.D. Pa. 2012). "The process that is 'due' in a given situation necessarily differs based on the particular circumstances." *Maple Props., Inc. v. Twp. of Upper Providence*, 151 F. App'x 174, 177 (3d Cir. 2005) (citations omitted).

The Eastern District recently explained:

> In the context of property deprivations, the United States Supreme Court "has never employed an actual notice standard in its jurisprudence. Rather, its focus has always been on the procedures in place to effect notice." *United States v. One Toshiba Color Television*, 213 F.3d 147, 155 (3d Cir. 2000). Thus, "[d]ue process does not require that a property owner receive actual notice before the government may take his property." *Jones v. Flowers*, 547 U.S. 220, 226 (2006). It mandates only that notice be "reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and

afford them opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also Flowers*, 547 U.S. at 220 (holding that notice is "constitutionally sufficient if it was reasonably calculated to reach the intended recipient when sent."). The Supreme Court has explained that if, for example, notice sent by certified mail is returned unclaimed, the municipality must "take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so." *Flowers*, 547 U.S. at 225. The Court recognized that such steps could include resending the notice by regular mail, addressing otherwise undeliverable mail to occupant, or posting notice on the front door. *Flowers*, 547 U.S. at 236-37.

*Madar*, 2021 WL 2156362, at *8.

Due process requires: (1) the government provide notice to the property owner reasonably calculated to apprise interested parties of the pendency of the action; and (2) afford them an opportunity to present their objections. *Gordon v. City of Phila.*, No. 07-5039, 2009 WL 2710247, at *3 (E.D. Pa. 2009) (citing *Flowers*, 547 U.S. at 220). "A plaintiff cannot prevail on a Fourteenth Amendment procedural due process claim if the state has an adequate post-deprivation procedure or remedy available." *Olarte v. Cywinski*, No. 3:12-CV-632, 2012 WL 3757649, at *5 (M.D. Pa. Aug. 28, 2012) (citing *Revell v. Port. Auth. Of N.Y. & N.J.*, 598 F.3d 128, 139 (3d Cir. 2010)). An adequate procedural due process remedy is when a state provides "reasonable remedies to rectify a legal error by a local administrative body." *Olarte*, 2012 WL 3757649, at *5 (quoting *Perano v. Twp. of Tilden*, 423 F. App'x. 234, 237 (3d Cir.2011)).

Here, Bruce complains that he did not receive proper notice from the City regarding "any maintenance issues or other possible basis for demolition" or "the issuance of fines or orders," in advance of the demolition of the Building, depriving him of the process "due." (Doc. 1, ¶¶ 10, 12). However, as noted above, Bruce accepted certified mail on May 13, 2019, and was personally served by the El Paso County Sheriff's Office on May 23, 2019, with the City's May 13, 2019, enforcement notice issued by Mr. Smith directing Bruce to demolish the

Building within thirty (30) days and notifying Bruce that if he failed to comply, the City would demolish the Building pursuant to § 110.3 of the Property Maintenance Code. (Doc. 11-2, at 8-9). The May 8, 2019, enforcement notice also notified Bruce that he had twenty (20) days to challenge the enforcement notice by filing an appeal with the City's Property Maintenance Code Appeals Board, as set forth in § 111.1[6] of the Property Maintenance Code. (Doc. 11-2, at 4). Specifically, the May 8, 2019, enforcement notice that Bruce received informed him, in pertinent part, as follows:

> Appeals of this enforcement action under the property maintenance code may be filed within twenty (20) days by filing an application with the City of Pittston Property Maintenance Code Appeals Board, as set forth in Section 111 of the property maintenance code. Please contact the city's administrative offices for the required forms and fee schedule to file this type of appeal.

> (Doc. 11-2, at 4).

Further, to the extent that Bruce argues his procedural due process rights were violated because the Building was demolished without a judicial hearing, the Court notes that where the government destroys a property in the interest of public safety, a pre-demolition hearing is not required. *Munoz*, 481 F. App'x at 758.

The Court finds that Bruce was afforded actual notice of the City's intent to demolish the Building and was afforded an opportunity to challenge the enforcement notice. There is

---

[6] Section 111.1 of the Property Maintenance Code provides, in pertinent part:

Any person directly affected by a decision of the code official or a notice of order issued under this code shall have the right to appeal to the board of appeals, provided that a written application for appeal is filed within 20 days after the day the decision, notice or order was served. An application for appeal shall be based on a claim that the true intent of this code or the rules legally adopted thereunder have been incorrectly interpreted, the provisions of this code do not fully apply, or the requirements of this code are adequately satisfied by other means.

(Doc. 11-20, at 10).

no mention in the complaint of any actions taken by Bruce to contest the enforcement notice or impending demolition by filing an appeal with the City's Property Maintenance Code Appeals Board or attempting to make the necessary repairs. Furthermore, to the extent that Count II of the complaint sets forth a post-deprivation procedural due process claim, the Court similarly finds that such claim fails because Bruce has not availed himself of the remedy available for inverse condemnation provided through the Pennsylvania Eminent Domain Code, 26 Pa. C.S.A. §§ 101 *et seq.*[7] *See Florimonte v. Borough of Dalton*, No. 3:CV-14-0341, 2014 WL 3114071, at *14 (M.D. Pa. July 7, 2014), *aff'd*, 603 F. App'x 67 (3d Cir. 2015) (dismissing Fourteenth Amendment procedural due process claim where plaintiff failed to avail herself of adequate state law post-deprivation remedies available); *see also Perano*, 423 F. App'x at 237-38 (dismissing procedural due process claim for failure to take advantage of a reasonable state remedy under the Eminent Domain Code). Bruce clearly had adequate state law remedies available to him in the City of Pittston. Bruce may not use the federal courts as a means to circumvent the procedural process made available to him. *See 3909 Realty LLC v. City of Philadelphia*, No. CV 21-0030, 2021 WL 2342929, at *6 (E.D. Pa. June 8, 2021) (dismissing plaintiffs' procedural due process claim finding that plaintiffs did not avail themselves of procedural protections afforded by City of Philadelphia because no actions were taken to contest impending demolition). Bruce has not stated a claim for a procedural due process

---

[7] The Pennsylvania Eminent Domain Code provides "a complete and exclusive procedure and law to govern all condemnations of property for public purposes and the assessment of damages." 26 Pa. C.S.A. § 102(a). The provisions of Pennsylvania's Eminent Domain Code provide that a condemnee is entitled to just compensation when his property has been taken, injured, or destroyed. *See* 26 Pa. C.S.A. § 701. The Code also provides a procedure by which a property owner may pursue relief for the taking of his property. *See* 26 Pa. C.S.A. § 502. Through this procedure, a landowner may request the appointment of viewers to declare that a taking has occurred and to ascertain just compensation. See 26 Pa. C.S.A. § 502(c).

where he received actual notice of the impending demolition of the Building and failed to avail himself of the appeals process prior to and after the demolition.

Accordingly, Bruce's Fourteenth Amendment Procedural Due Process claim against the City is dismissed with prejudice. *See Peynado*, 2011 WL 5920767, at *2.

F. WHETHER BRUCE'S FOURTEENTH AMENDMENT SUBSTANTIVE DUE PROCESS CLAIM FAILS.

Count III of the complaint asserts a claim against the City for the alleged violation of Bruce's substantive due process rights under the Fourteenth Amendment arising out of the demolition of the Building. (Doc. 1, ¶¶ 31-39). Bruce alleges that the City violated his substantive due process rights in a way that should shock the conscience of the Court because the City "has acted in an arbitrary and capricious manner with respect to [Bruce]'s rights in the Property, including by issuing excessive and unconstitutional fines or orders which [Bruce] had no ability to challenge and then demolishing the building on the Property without notice . . . ." (Doc. 1, ¶ 33, 37; Doc. 31, ¶¶ 3, 7, 15). Bruce asserts that the City's ordinances, in conjunction with the excessive and unconstitutional fees and fines, "do not advance a legitimate public purpose, but instead exist as a method of [the City] to enrich itself at the expense of unsuspecting property owners." (Doc. 1, ¶ 36; Doc. 31, ¶¶ 2-3). Moving for dismissal, the City argues that Bruce's Fourteenth Amendment substantive due process claim fails as a matter of law because "the demolition of [Bruce]'s unsafe Building was rationally related to a legitimate state interest." (Doc. 17, at 31) (citing *Whittaker v. Cty. of Lawrence*, 674 F. Supp. 2d 668, 701 (W.D. Pa. 2009), *aff'd*, 437 F. App'x 105 (3d Cir. 2001)).

The substantive component of the Fourteenth Amendment Due Process Clause bars certain arbitrary and wrongful government actions that deprive an individual of life, liberty, or property. U.S. Const., amend. XIV § 1; *see also Tazioly v. City of Phila.*, No. 97-CV-1219,

1998 WL 633747, at *7 (E.D. Pa. Sept. 10, 1998) (citing *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)). The first step in assessing a substantive due process claim is to identify the constitutional interest that was allegedly aggrieved. *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008). In order to successfully make out a substantive due process claim in the context of local land use regulations, "a plaintiff must establish as a threshold matter that he has a property interest protected by the Fourteenth Amendment's due process clause." *Maple Props., Inc. v. Twp. of Upper Providence*, No. 00-CV-4828, 2004 WL 2579740, at *2 (E.D. Pa. Nov. 12, 2004) (citing *Indep. Enters. Inc. v. Pittsburgh Water & Sewer Auth.*, 103 F.3d 1165, 1179-80 (3d Cir. 1997)). Here, as Bruce owns a piece of property that was affected by the City's actions, he has established the presence of a property interest entitled to due process protection. *See Maple Props.*, 2004 WL 2579740, at *2 (citing *DeBlasio v. Zoning Bd. of Adjustment for Twp. of W. Amwell*, 53 F.3d 592, 600 (3d Cir. 1995)); *see also Cherry Hill Towers, LLC v. Twp. of Cherry Hill*, 407 F. Supp. 2d 648, 654 (D.N.J. 2006) ("As owner of the Cherry Hill Towers property, Plaintiff clearly has a property interest protected by due process.").

The second step in the substantive due process analysis is ascertaining whether the identified property interest has, in fact, been aggrieved by the government. *Maple Props.*, 2004 WL 2579740, at *2. Government action does not violate substantive due process when merely prompted by an "improper motive." *Cty. Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 169 (3d Cir. 2006). Rather, the standard for determining substantive due process violations is whether government action rises to the level of "shocking the conscience." *United Artists Theatre Circuit v. Twp. of Warrington*, 316 F.3d 392, 400 (3d Cir. 2003). While there is no "calibrated yard stick" upon which to measure such conduct, the United States Supreme Court has recognized that "only the most egregious official conduct" qualifies. *Kaucher v. Cty.*

*of Bucks*, 455 F.3d 418, 425 (3d Cir. 2006) (citing *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845, 847 n.8 (1998)); *see also Cherry Hill Towers*, 407 F. Supp. 2d at 655.

Here, Bruce fails to identify evidence of conscience-shocking behavior in the City's demolition of the Building without giving him actual notice. The Supreme Court has observed that "all property in this country is held under the implied obligation that the owner's use of it shall not be injurious to the community." *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 491-92 (1987) (quotation omitted). "[T]he public interest demands that all dangerous conditions be prevented or abated," and, thus, inspections of private property designed at ensuring compliance with certain safety standards are not unconstitutional. *Camara v. Municipal Court of San Francisco*, 387 U.S. 523, 537 (1967); *see Win & Son*, 162 F.Supp.3d at 459. Evidence in the record reveals that the Building had been condemned since September 18, 2014, and was demolished in accordance with the procedures of the City's Property Maintenance Code. (Doc. 11-25, at 2). On November 26, 2018, the City's Code Enforcement Officer, Mr. Smith, notified Bruce that the Building "continues to pose a risk to emergency personnel and nearby residents," and that there were "ongoing complaints from adjacent properties of rats and mice coming from the [Building." (Doc. 11-25, at 3). On May 8, 2019, Mr. Smith notified Bruce that, after consultation with an engineer, the Building "is so deteriorated and dilapidated that it is dangerous, unsafe, insanitary and otherwise unfit for human habitation or occupancy," that it "continues to pose a risk to emergency personnel and nearby residents," and that there is an "infestation with rodents and insects." (Doc. 11-2, at 2-4). "Given the unsafe structure and that the property was unfit for human occupancy, no reasonable jury could find that the demolition in accordance with [Property Maintenance] Code rules and procedures shocks the conscience." *Harmon v. Sussex Cty.*, No. CV 17-1817-

RGA, 2019 WL 4344635, at *7 (D. Del. Sept. 12, 2019), *aff'd*, 810 F. App'x 139 (3d Cir. 2020) (citing *Davet v. City Cleveland*, 456 F.3d 549, 552 (6th Cir. 2006) (affirming district court's holding that plaintiff's substantive due process claim failed because he could not establish that municipal actions taken pursuant to a valid condemnation order and in accordance with the procedures mandated by city and state law shocked the conscience or were arbitrary and capricious)).

Accordingly, Bruce's Fourteenth Amendment Substantive Due Process claim against the City is dismissed with prejudice. *See Peynado*, 2011 WL 5920767, at *2.

### G. WHETHER BRUCE'S EIGHTH AMENDMENT CLAIM FAILS.

Count IV of the complaint asserts a claim against the City for the alleged violation of the Excessive Fines Clause of the Eighth Amendment arising out of the demolition of the Building and the issuance of five (5) fines by Magisterial District Judge Kravitz. (Doc. 1, ¶¶ 40-50). Bruce alleges that the City "issued excessive and unconstitutional fines against the Property related to the maintenance of the building on the Property," and that the fine "cannot be viewed to be remedial in nature," as they were imposed without proper notice and "before any appearance, judicial hearing, or Due Process of law." (Doc. 1, ¶¶ 41-44; Doc. 31, ¶ 3). In addition, Bruce complains that the City issued arrest warrants against Bruce for failure to pay the fines, which are damaging to the reputation and credit of Bruce. (Doc. 1, ¶¶ 45-46; Doc. 31, ¶¶ 7-8, 26).

The Eighth Amendment provides: "Excessive bail shall *896 not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Excessive Fines Clause of the Eighth Amendment prohibits the government from imposing excessive fines as punishment. To determine if an excessive fine exists in violation

of the Eighth Amendment, the court must first determine whether a fine exists which is punitive in nature, and if so, must address whether the fine was grossly disproportional to the offense. *United States v. Bajakajian*, 524 U.S. 321, 328, 336-37 (1998).

"By its plain language, the Excessive Fines Clause of the Eighth Amendment is violated only if the disputed fees are both 'fines' and 'excessive.'" *Tillman v. Lebanon Cty. Corr. Facility*, 221 F.3d 410, 420 (3d Cir. 2000). "The term 'fine' refers to punishment for a criminal offense." *Tillman*, 221 F.3d at 420 (citing *Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 265 (1989)). To be considered a fine under the Eighth Amendment, a monetary charge must be punitive in character. *Tillman*, 221 F.3d at 420 (noting that district court wrestled with factual question of whether prison program which imposed fees had rehabilitative or punitive purpose); *see also Austin v. United States*, 509 U.S. 602, 607-11 (1993) (extending the Excessive Fines Clause to *in rem* civil forfeiture, where the forfeiture acts as a punishment).

Moving for dismissal, the City first argues that Bruce's Eighth Amendment claims based on the five (5) fines imposed by the Magisterial District Court are barred by the *Rooker-Feldman* Doctrine. (Doc. 17, at 34). In opposition, Bruce argues that the *Rooker-Feldman* doctrine does not prevent his claims because "[h]as no fair opportunity to make his due process case before demolition; he never appeared in state court (tried *in absentia*); he was threatened with virtually unlimited jailing for no listed acts; etc." (Doc. 31, ¶ 23).

The *Rooker-Feldman* doctrine "is a judicially-created doctrine that bars lower federal courts from reviewing certain state court actions." *Goodson v. Maggi*, 797 F. Supp. 2d 587, 597 (W.D. Pa. 2011). The doctrine arose in the wake of two Supreme Court Cases, *Rooker v.*

*Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), and stands for the proposition that:

> . . . a United States District Court has no subject matter jurisdiction to review final judgments of a state court, because only the Supreme Court has jurisdiction to review state court judgments under 28 U.S.C. § 1257. *Goodson*, 797 F.Supp.2d at 597 (citing *Feldman*, 460 U.S. at 482, 103 S.Ct. 1303). . . . "This doctrine applies even where the challenges to the state court judgment allege that the state court's action was unconstitutional, such as a deprivation of due process and equal protection rights." *Goodson*, 797 F.Supp.2d at 597 (citing *Feldman*, 460 U.S. at 485-86, 103 S.Ct. 1303 (citation omitted)).

> *Conklin v. Anthou*, No. 1:10-CV-2501, 2012 WL 124989, at *2 (M.D. Pa. Jan. 17, 2012), *aff'd*, 495 F. App'x. 257 (3d Cir. 2012).

Claims by "state-court losers complaining of injuries caused by state-court judgments" are barred by the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine applies where (i) the federal plaintiff lost in state court; (ii) the plaintiff claims the judgment(s) of the state court caused his injuries; (iii) the state court rendered its judgment(s) before plaintiff filed his federal suit; and (iv) the plaintiff is inviting the district court to review and reject the state judgments." *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010). In this case, all four criteria are met. Therefore, the Court lacks jurisdiction over Bruce's claims.

Bruce alleges that the fines Magisterial District Judge Kravitz imposed in magisterial court docket Nos. MJ-11104-NT-0000015-2019, MJ-11104-NT-0000023-2019, MJ-11104-NT-0000113-2019, MJ-11104-NT-0000134-2019, and MJ-11104-NT-0000270-2019 (collectively, the "Imposed Fines") were "excessive and constitutional fines," and a "punishment as that term is understood in the context of the Eighth Amendment." (Doc. 1, ¶¶ 41-42). Thus, Bruce is claiming that the judgment of the state court caused injury to him, fulfilling the second criterion of the *Rooker-Feldman* doctrine.

- 31 -

Magisterial District Judge Kravitz issued the Imposed Fines on May 23, 2019. (Doc. 11-13, at 3; Doc. 11-14, at 3; Doc. 11-15, at 3; Doc. 11-16, at 3; Doc. 11-17, at 3). Bruce filed his complaint in the United States District Court for the Middle District of Pennsylvania on May 1, 2023. (Doc. 1). Thus, the state court's Imposed Fines were rendered prior to Bruce filing federal suit, satisfying the third criterion. In the complaint, Bruce requests "immediate cancelation of all warrants for arrests and fines." (Doc. 1, at 11). Such request is an invitation to the Court to review and reject judgments made by the state court, satisfying the fourth criterion.

Because Bruce satisfies all four criteria, the *Rooker-Feldman* doctrine bars Bruce's Eighth Amendment claims based on the Imposed Fines. Accordingly, Bruce's Eighth Amendment Excessive Fees Clause claims against the City based on the Imposed Fines are dismissed with prejudice. *See Peynado*, 2011 WL 5920767, at *2.

Next, the City argues that Bruce's claim related to Magisterial District Court docket No. MJ-11104-NT-0000364-2019 (the "Unimposed Fine") should be dismissed as not ripe because no fine and/or sentence has been imposed by Magisterial District Judge Kravitz. (Doc. 17, at 37-38; Doc. 11-26, at 2-3). A district court only has subject matter jurisdiction over a claim if the claim is ripe for resolution. *Wayne Land & Mineral Grp. LLC v. Del. River Basin Comm'n*, 894 F.3d 509, 522 (3d Cir. 2018) (citing *Peachlum v. City of York*, 333 F.3d 429, 433 (3d Cir. 2003)). "The function of the ripeness doctrine is to determine whether a party has brought an action prematurely." *Jie Fang v. Dir. U.S. Immigration & Customs Enforcement*, 935 F.3d 172, 185 (3d Cir. 2019). When considering whether a claim is ripe, "a court must consider (1) the fitness of the issues for judicial decision and (2) the hardship to the parties from withholding judicial consideration." *Comite' de Apoyo a los Trabajadores Agricolas v. Perez*,

774 F.3d 173, 183 (3d Cir. 2014) (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967)).

A claim is not ripe "if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Sherwin-Williams Co. v. Cty. of Del., Pa.*, 968 F.3d 264, 272 (3d Cir. 2019) (quoting *Wyatt v. Virgin Islands, Inc.*, 385 F.3d 801, 806 (3d Cir. 2004)).

As the City explains, Section 370-2(D)[8] of the Property Management Code controls the imposition of a fine under the Property Maintenance Code and provides that only "[u]pon conviction before the Magisterial District Judge," may a fine be imposed. (Doc. 11-21, at 5). There has been no fine or sentence imposed by Magisterial District Judge Kravitz in docket No. MJ-11104-NT-0000364-2019, which the City submits is caused by "[Bruce]'s failure to enter a plea." (Doc. 17, at 37; Doc. 11-26, at 2-3). Therefore, Bruce's excessive fines claim based on the Unimposed Fine is not ripe because the magisterial court has not assessed a fine. (Doc. 11-26, at 2-3); *see City of Chicago v. Equte LLC*, No. 21-CV-518, 2022 WL 2132630, at *3 (N.D. Ill. June 14, 2022) ("Because the Court has not yet assessed a fine, Defendants' excessive fines claim is not ripe."). Accordingly, Bruce's Eighth Amendment Excessive Fees Clause claim against the City based on the Unimposed Fine is dismissed with prejudice. *See Peynado*, 2011 WL 5920767, at *2.

---

[8] Section 370.2(D) of the Property Maintenance Code states, in pertinent part, as follows:

> The City Property Maintenance Code Enforcement Officer shall issue a nontraffic citation for each violation of this code. Upon conviction before the District Magisterial Judge, a fine of not less than $500 for a first offense and not more than $1,000 for each subsequent offense, plus all City-incurred court costs and legal fees, shall be imposed, and upon default of payment of fines and/or costs, a sentence of not more than 30 days in the county jail shall be imposed. Each day of violation shall be deemed a separate offense. Both the property owner and the violator shall be cited for such offense.

(Doc. 11-21, at 5).

Lastly, the City argues that Bruce's Eighth Amendment Excessive Fines claim arising out of the demolition of the Building fails as a matter of law because the demolition of a derelict building in accordance with the Property Maintenance Code does not constitute punishment for a criminal offense. (Doc. 17, at 39). Bruce does not provide any support for his claim.

The Supreme Court has interpreted the Excessive Fines Clause to apply to civil fines. *Austin,* 509 U.S. at 610 ("The notion of punishment, as we commonly understand it, cuts across the division between the civil and the criminal law.") (quoting *United States v. Halper,* 490 U.S. 435, 447-48 (1989)). The Supreme Court explained that the question is not whether the fine is civil or criminal, but whether it is punishment. *Austin,* 509 U.S. at 610. With regards to making this determination, the Supreme Court has explained that " 'a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term.'" *Austin*, 509 U.S. at 610 (quoting *Halper,* 490 U.S. at 448).

If a civil sanction is punitive, it will be found to be excessive under the Eighth Amendment only if it is "grossly disproportional to the gravity of [the] offense." *Bajakajian,* 524 U.S. at 334. The Supreme Court has explained that "[t]he touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the [fine] must bear some relationship to the gravity of the offense that it is designed to punish." *Bajakajian,* 524 U.S. at 334.

Here, Bruce has not introduced any evidence to suggest that demolition of the condemned Building operated as "publishment for a criminal offense," for purposes of the Eighth Amendment. *See Tillman,* 221 F.3d at 420 ("The term 'fine' refers to punishment for a

criminal offense."). After Bruce failed to comply with the May 8, 2019, enforcement notice, the City passed Resolution Number 12275, which legislatively authorized the demolition of the Building through its inherent police power. (Doc. 11-19, at 2-4); *see In re 106 N. Walnut, LLC,* 447 F. App'x at 309 ("A municipality may, in the exercise of its police power, without compensation destroy a building or structure that is a menace to the public safety or welfare . . . ."). Further, as noted above, the City issued multiple non-traffic citations and enforcement notices to Bruce for the Building. (Doc. 11-2; Doc. 11-3; Doc. 11-4; Doc. 11-5; Doc. 11-6; Doc. 11-7; Doc. 11-8; Doc. 11-25); *see MacLean v. State Bd. of Ret.,* 432 Mass. 339, 733 N.E.2d 1053, 1062 (Mass.2000) (concluding that forfeiture was not excessive where forfeiture was the result of "multiple illegal activities triggering the forfeiture, not a single minor violation, and the offenses occurred over a period of time."); *see also United States v. Emerson,* 107 F.3d 77, 80 (1st Cir.1997) (concluding that fine was not excessive in part because of the defendant's "pattern of persistent disregard of government regulation"). There is no dispute that the purpose of the Property Maintenance Code is to protect the public from harm caused by building that are dangerous, unsafe, insanitary and otherwise unfit for human habitation or occupancy. Therefore, the Court finds that the demolition of the Building does not constitute a punishment for purposes of the Eighth Amendment.

Accordingly, Bruce's Eighth Amendment Excessive Fees Clause claim against the City based on the demolition of the Building is dismissed with prejudice. *See Peynado,* 2011 WL 5920767, at *2.

H.  WHETHER BRUCE IS ENTITLED TO PUNITIVE DAMAGES.

In the complaint, Bruce makes a demand for punitive damages against the City. (Doc. 1, at 10). The City moves to strike Brue's request arguing that punitive damages are not

recoverable as a matter of law. (Doc. 17, at 42). The Supreme Court has determined that, absent a statute to the contrary, punitive damages cannot be awarded against a government entity. *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247 (1981). Accordingly, Bruce's demand for punitive damages against the City is dismissed with prejudice. *See Peynado,* 2011 WL 5920767, at *2.

I.   WHETHER SANCTIONS ARE WARRANTED.

The City moves for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure. (Doc. 25; Doc. 30). The City asserts that because Bruce's claims are objectively meritless, groundless, and frivolous, dismissal of the complaint with prejudice and an award of attorney's fees paid by Bruce to the City is an appropriate sanction. (Doc. 30, at 37). Rule 11 of the Federal Rules of Civil Procedure requires that "[e]very pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name—or by a party personally if the party is unrepresented." Fed. R. Civ. P. 11(a). Federal Rule of Civil Procedure 11 authorizes courts to sanction—

> the signatory to any pleading, motion or other paper which is not well grounded in fact nor warranted by existing caselaw or a good faith argument for the extension, modification, or reversal of existing law, or which is interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.
>
> *Landon v. Hunt*, 938 F.2d 450, 452 (3d Cir. 1991).

"The standard for testing conduct under Rule 11 is reasonableness under the circumstances. The rule imposes on counsel a duty to look before leaping[.]" *Keister v. PPL Corp.*, 318 F.R.D. 247, 255 (M.D. Pa. 2015) (citations omitted). Sanctions under the Rule are particularly appropriate when the offending party demonstrates "a deliberate indifference to obvious

facts." *Keister*, 318 F.R.D. at 256 (quoting *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998)).

Courts must tailor Rule 11 sanctions to the particular circumstances of the case, keeping in mind that the Rule's purposes are lawyer accountability and the deterrence of frivolous lawsuits and filings. *See Keister*, 318 F.R.D. at 256-57. "The basic principle governing the choice of sanctions is that the *least severe* sanctions *adequate* to serve the purpose should be imposed." *Keister*, 318 F.R.D. at 256-57 (emphasis in original) (quoting *Doering v. Union Cty. Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988)). Courts may consider a number of factors in determining what the appropriate sanction,[9] but the ultimate decision remains in the sound discretion of the district court. *See Keister*, 318 F.R.D. at 256; *see also DiPaolo v. Moran,* 407 F.3d 140, 144 (3d Cir. 2005) (citing *Garr v. U.S. Healthcare,* 22 F.3d 1274, 1279 (3d Cir. 1994)).

The City's motion for sanctions urges the Court to impose sanctions against Bruce in the form of attorney's fees and dismissal of the complaint for filing a complaint that is a "misuse of the [District] court's processes" and constitutes "abusive litigation," and where

---

[9] The Advisory Committee on Rules has identified a number of such factors:

Whether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; what amount is needed to deter similar activity by other litigants: all of these may in a particular case be proper considerations.

Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment; *see Lal v. Borough of Kennett Square,* 935 F. Supp. 570, 577 (E.D. Pa. 1996).

Bruce's prior counsel sought to withdraw from further representing Bruce after he refused to withdraw the complaint. (Doc. 30, at 37). The City submits that Bruce omitted and misrepresented information, such that the complaint "constitute[s] deliberate indifference to obvious facts in the pursuit of a monetary award and warrants a sanction designed to place the City legally and financially in the same position it would have occupied but for the improper filing of [Bruce]'s complaint." (Doc. 30, at 37). The City argues that sanctions are warranted because Bruce violated his duty to allege only colorable claims when he refused to voluntarily withdraw this lawsuit. (Doc. 30, at 36-38).

In opposition, Bruce argues that the City's motion was "filed with unclean hands," and that the City misused Rule 11 to intimidate his prior counsel into withdrawing from representing Bruce. (Doc. 31, ¶¶ 1, 28). Bruce avers:

> The complaint is justified by facts in this Answer, so [the City]'s motion fails. Claiming a building may someday be demolished for undefined reasons is no notice at all. . . . The City's position its "police power" overrides the Fourteenth Amendment is insane and unAmerican. THAT view is what is "frivolous."

(Doc. 31, ¶ 24).

This Court generally endorses the principle that the appropriate sanction for weak claims will not always arrive via Rule 11, "but will sometimes assume the more pedestrian form of dismissal or summary judgment." *Emerick v. Norfolk S. Ry. Co.*, No. CIV.A. 03-266J, 2006 WL 2792217, at *3 (W.D. Pa. Sept. 26, 2006). "However, the integrity of the adjudicatory process depends in part on the ability to sanction what can be considered nothing but frivolous and unreasonable litigation." *Reynolds v. Metro. Life Ins. Co.*, No. CIV.A. 3:04-232, 2007 WL 603012, at *10 (W.D. Pa. Feb. 22, 2007) (citing *Robert S. v. City of Philadelphia*, No. 97-6710, 2001 WL 1021190, at *3 (E.D. Pa. Sept. 4, 2001) (finding that plaintiff's claims,

even if legally unsupportable, could not be called frivolous or unreasonable where there was some supporting evidence)).

The Court, in large part, agrees with the City. It is apparent to the Court that Bruce, a former Deputy District Attorney, who is in a unique position of representing himself, plainly failed to engage in appropriate behavior, failed to produce evidentiary support for his case, and failed to conduct a reasonable inquiry into the facts and law governing the causes of action advanced in the complaint prior to initiating this action. Indeed, the City provides evidence to suggest that Bruce's intent to sue the City of Pittston was born more from emotion and a thirst for retaliation than from a sense that his constitutional rights had been infringed. Thus, the Court finds that this action is more the fulfillment of a threat of litigation than the product of any reasonable assessment of relevant facts and law.

The City's motion for sanctions provided Bruce the notice that due process requires for Rule 11 purposes. (Doc. 25); *Simmerman v. Corino*, 27 F.3d 58, 64 (3d Cir. 1994). Bruce had notice that the City had moved for Rule 11 sanctions, the grounds for that motion, and the form of sanctions being sought. Bruce's opposition brief merely claimed that sanctions were unwarranted because "[t]he complaint is justified by facts in this Answer." (Doc. 31, ¶ 24). The argument against sanctions is thus a close cousin of the argument against judgment on the pleadings, bred on little more than conclusory assertions and deprived of any real sustenance. Therefore, the Court finds that the payment of the City's attorney's fees is an adequate sanction for the conduct at issue.

Accordingly, the Court will grant the motion for sanctions and award the City the attorney's fees associated with defending this action and filing the motion for judgment on the pleadings. *See Keister*, 318 F.R.D. at 272 (awarding defendants reasonable attorney's fees

where plaintiff brought a frivolous employment discrimination lawsuit); *Reynolds*, 2007 WL 603012, at *11 (awarding defendant costs associated with motion for summary judgment where plaintiff produced "remarkably little evidentiary support for his case").

## IV.   CONCLUSION

For the foregoing reasons, the City's motion for judgment on the pleadings and motion for sanctions are **GRANTED**. (Doc. 14; Doc. 25).

An appropriate Order follows.

Dated: October 10, 2023                              BY THE COURT:

                                                     *s/ Karoline Mehalchick*
                                                     **KAROLINE MEHALCHICK**
                                                     **Chief United States Magistrate Judge**